O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
~~JS-6~~

CIVIL MINUTES - GENERAL

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s): Attorneys Present for Defendant(s):

Not Present Not Present

**Proceedings:** **(In Chambers) Order DENYING motion to dismiss**

Pending before the Court is Defendant Stonefield Josephson, Inc's motion to dismiss the First Amended Complaint. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court DENIES the motion.

I.    Background

On April 24, 2009, the Securities and Exchange Commission initiated an action against Private Equity Management Group, Inc., Private Equity Management Group LLC (collectively, "PEM Group") and PEM Group's chairman, Danny Pang, alleging that PEM Group engaged in a range of fraudulent conduct and securities violations, including making material misrepresentations regarding the use of investors' funds and diverting the funds for improper purposes.[1] *See S.E.C. v. Private Equity Management Group, Inc. Case No.* CV 09–2901–PSG (Ex). On July 2, 2009, the Court issued a Preliminary Injunction and Order that, among other things, appointed Robert P. Mosier (the "Receiver") as permanent receiver of PEM Group and its subsidiaries and affiliates. *See id.* (Dkt # 246).

This action is brought by the Receiver against Defendant Stonefield Josephson, Inc. ("Defendant" or "Stonefield"), an accounting and business consulting firm that served as auditor for one of PEM Group's affiliates, GVEC. *FAC* ¶ 14. PEM Group, purportedly a financial

---

[1] The Court refers to Pang and the PEM Group officers and directors who engaged in such misconduct collectively as "PEM Group Principals."

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

management and advisory service company, offered and sold securities through "special purpose vehicle" ("SPV") entities that it established in the British Virgin Islands (the "GVEC entities"). *FAC* ¶ 1. From late 2003 through mid-2006, the PEM Group-controlled GVEC entities conducted a series of securities offerings, typically in the form of notes, debentures, and collateralized debt obligations.[2] *FAC* ¶ 17. PEM Group's purported business purpose was to invest in life insurance policies and time-share related assets. *FAC* ¶¶ 2, 19, 21. However, as was later discovered, the GVEC offerings were part of a massive Ponzi scheme in which PEM Group sold life insurance policies owned by earlier investors to later investors at an inflated value, and divested the funds purportedly used to purchase the policies for a variety of improper purposes. *FAC* ¶¶ 2-6.

      According to the Receiver, Stonefield was retained in 2003 to audit the financial statements, statements of assets, liabilities and net assets, and related statements of operations and changes in net assets of the GVEC entities. *FAC* ¶ 26. It was allegedly required to conduct such audits in accordance with Generally Accepted Auditing Standards ("GAAS"). *FAC* ¶¶ 26, 27. In bringing this action, the Receiver essentially alleges that Stonefield assisted the PEM Group Principals' misappropriation of funds by failing to conduct audits in accordance with GAAS, and by preparing and distributing false and misleading audit reports. *FAC* ¶ 6. More specifically, the pleading asserts that Stonefield knew or should have known that certain inter-Tranche transfers were improper and the insurance policies that were subject of the sales were inaccurately valued. *FAC* ¶ 30. It asserts that "despite knowing that GVEC had engaged in inter-Tranche transfers and failing to investigate these transfers, Stonefield represented that its audit reports fairly presented the financial position of GVEC Tranches." *FAC* ¶ 32. Further, according to the pleading, these allegedly false audit reports induced investors to make and maintain investments in debt offered by PEM Group and the GVEC entities, and "harmed PEM Group and its Tranches by, among other things, causing Tranches to purchase life insurance policies at inflated prices." *FAC* ¶¶ 34, 35.

      Based on these, and other, allegations, on July 1, 2011, the Receiver filed a First Amended Complaint against Stonefield, asserting claims for (1) professional negligence; (2) aiding and abetting conversion; and (3) unjust enrichment. *See* Dkt. # 12 (July 1, 2011). Stonefield now seeks to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. # 14 (July 25, 2011).

---

[2] Such offerings were referred generally as "funds" or "Tranches." *FAC* ¶ 1.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

II.     Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts should be mindful that the Federal Rules of Civil Procedure generally require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim to relief.  *See id.*

In evaluating a Rule 12(b)(6) motion, the court must engage in a two-step analysis. *See id.* at 1950.  First, the court must accept as true all non-conclusory, factual allegations made in the complaint.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161, 122 L. Ed. 2d 517 (1993).  Based upon these allegations, the court must draw all reasonable inferences in favor of the plaintiff.  *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009).  Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim for relief. *See Iqbal*, 129 S. Ct. at 1950.  Despite the liberal pleadings standards of Rule 8, conclusory allegations will not save a complaint from dismissal.  *See id.*

III.    Discussion

In moving to dismiss the Receiver's First Amended Complaint, Stonefield presents essentially three discrete arguments.  First, it argues that because the allegations show that PEM Group's investors – as opposed to PEM Group or its affiliates – were harmed by the alleged misconduct, the Receiver lacks standing to pursue his claims for relief.  Second, it contends that the Receiver's claims are barred by the equitable defense of *in pari delicto.*  Third, Stonefield asserts that the Receiver fails to adequately plead requisite elements of its first and second causes of action.  To this end, it argues that the Receiver's first claim for professional negligence claim fails because Plaintiff cannot establish the element of causation, and that the Receiver's second claim for aiding and abetting conversion fails because the pleading fails to set forth facts

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

establishing that Stonefield had actual knowledge of PEM Group's alleged conversion. In proceeding, the Court will address each argument in turn.

    A.    <u>Standing</u>

As noted above, Stonefield first contends that the Receiver lacks standing to pursue the claims asserted in the FAC because those claims allegedly belong to investors. The Court, however, disagrees.

In general, a receiver has capacity to bring only such actions as could have been brought by the entity or individual whose property is in a receivership, and thus may sue only to redress injuries to the entity in receivership. *Grant v. A.B. Leach & Co.*, 280 U.S. 351, 50 S.Ct. 107, 74 L.Ed. 470 (1930); *see also Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995). In contrast, an equity receiver or trustee of an entity cannot pursue claims where the alleged harm was suffered only by third-party investors in that entity. *See Williams v. California 1st Bank*, 859 F.2d 664, 666 (9th Cir. 1988); *cf. Hays v. Adam*, 512 F. Supp. 2d 1330, 1341 (N.D. Ga. 2007) (noting that third party investors may nonetheless indirectly benefit from the receiver's action as creditors of the receivership). As the Ninth Circuit has noted, "[a]lthough the line between 'claims of the debtor,' which a trustee [or equity receiver] has statutory authority to assert, and 'claims of creditors,' which [*Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972)] bars the trustee from pursuing, is not always clear, the focus of the inquiry is on whether the Trustee is seeking to redress injuries to the debtor itself caused by the defendants' alleged conduct." *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005).

Here, upon reviewing the FAC, the Court finds that the allegations show that, in bringing this action, the Receiver seeks to redress injuries caused to PEM Group and its affiliate entities by Stonefield's alleged misconduct. The Receiver, for example, has alleged that Stonefield owed, and breached, a contractual duty of care to PEM Group and GVEC to conduct and audit of the company's financial statements using the appropriate industry standards. *FAC* ¶¶ 30-32, 43-47. He goes on to assert that Stonefield's breach of this duty allowed the PEM Group Principals to dissipate GVEC's assets through transfers to other Tranches when GVEC was unable to pay its operating expenses, which ultimately led to the "retirement" of GVEC portfolios once those portfolios had been looted of their assets. *FAC* ¶¶ 25-26, 35. Further, according to the pleading, "[h]ad the misuse of funds been revealed earlier, Pang and the PEM

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

Group Management Team would have been stopped and investigated, preventing millions of dollars of additional losses." *FAC* ¶ 35.

While certain allegations in the FAC could conceivably be said to allege injury to investors as well, this does not necessarily vitiate the Receiver's standing to pursue claims on behalf of the receivership entities. Rather, as the Ninth Circuit has acknowledged, so long as an entity in receivership has suffered harm, an equity receiver has standing to pursue a claim for such injuries – even if the creditors of the receivership entity may also have a claim arising from the same underlying misconduct. *Smith v. Arthur Andersen LLP,* 421 F.3d 989, 1002-04 (9th Cir. 2005) (noting that the "dissipation of assets limited the firm's ability to repay its debts . . .is not, however, a concession that only the creditors, and not [the corporate entity] itself, have sustained any injury. [I]t is a recognition of the economic reality that any injury to an insolvent firm is necessarily felt by its creditors."). In *Smith,* for example, the plaintiff trustee alleged that the defendants breached duties owed to Boston Chicken, claiming that "if they had not concealed Boston Chicken's financial condition from its outside directors and the investing public, the firm might have filed for bankruptcy more promptly." *Id.* at 1003. Reasoning that "in that situation, additional assets might not have been spent on a failing business[,]" the Ninth Circuit concluded that the "allegedly wrongful expenditure of corporate assets qualifies as an injury to the firm which was sufficient to confer standing upon the Trustee." *Id.*

Here, similarly, the Receiver has alleged that Stonefield's failures to (1) conduct rigorous audits in accordance with GAAS standards, *FAC* ¶ 35; (2) to make disclosures regarding, *inter alia,* allegedly improper inter-Tranche transfers, *FAC* ¶¶ 32, 46; and (3) Stonefield's allegedly false and misleading audit reports were all significant factors in concealing Pang and PEM Group Principals' misuse of investor funds. *FAC*. ¶ 35. According to the pleading, had the misuse of funds been revealed earlier, additional losses would have not been incurred. *Id.* The Court finds that, as in *Smith*, these allegations qualify as a corporate injury traceable to Stonefield's conduct for which the Receiver is authorized to seek recovery. Additionally, while Stonefield contends that PEM Group's use of funds from later Tranches to purchase life insurance policies from earlier GVEC Tranches at inflated prices actually *benefitted* GVEC in that it "served to maintain the illusion of the financial and operational strength of PEM Group," *Reply* 1:13-16, evaluation of this assertion requires the Court to look beyond the pleadings. At this stage in the proceedings, however, the Court must take as true the Receiver's allegations that the PEM Group and GVEC entities were harmed by, *inter alia*, their inability to repay various note and debenture holders as a result of Stonefield's alleged misconduct. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

Thus, based on the foregoing, the Court concludes that the Receiver has standing to pursue his claims against Stonefield.

    B.    *In Pari Delicto* Defense

Next, Stonefield argues that because PEM Group, acting through its management and directors, engaged in and/or condoned the same transactions that the Receiver alleges Stonefield should have disclosed, his claims are therefore barred by the doctrine of *in pari delicto*. The *in pari delicto* defense bars one participant in an unlawful act from recovering damages from another participant in the unlawful act. *See In re Crown Vantage, Inc.,* No. 02–3836 MMC, 2003 WL 25257821, at *6 (N.D. Cal. Sept. 25, 2003); *see also Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1143, 26 Cal. Rptr. 3d 401, 404 (2005) ( "The doctrine of *in pari delicto* dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto,* and the law will aid neither, but rather, will leave them where it finds them." ). In essence, the doctrine can be understood as asking whether the plaintiff or the defendant is more morally blameworthy for the unlawful conduct that has occurred. *See Chen v. Golden Eagle Group, Inc*., No. C-07-4433 CRB (EMC), 2008 WL 4679864, at *1 (N.D. Cal. Oct. 21, 2008) (internal citations omitted).

Stonefield argues that the FAC should be dismissed because, based on principles of California agency law, PEM Group and its directors and officers were "completely responsible for the fraudulent scheme[,]" and therefore *in pari delicto* with the alleged conduct of Stonefield.³ *Mot.* 9:20-22. In response, the Receiver asserts that application of the *in pari delicto* defense is barred by the Ninth Circuit's decision in *FDIC v. O'Melveny & Myers*, 61 F.3d 17 (9th Cir. 1995). Accordingly, the Court turns its attention to the threshold question of whether Stonefield is entitled to invoke the defense against the Receiver.

In *O'Melveny & Myers,* the Federal Deposit Insurance Corporation ("FDIC") took over as receiver for an insolvent bank whose principals had been involved in fraud. *F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 746-47 (9th Cir. 1992). In its capacity as receiver, the FDIC

---

³ In general, where the plaintiff is a corporation, the doctrine of *in pari delicto* applies if, under agency principles, the unlawful actions of an agent of the corporation are imputed to the corporation. *In re Crown Vantage, Inc*., 2003 WL 25257821 at *6.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

filed suit against the bank's outside attorneys for professional negligence, negligent misrepresentation, and breach of fiduciary duty based on allegations that the law firm participated in preparing misleading documents designed to induce investment in real estate deals. *Id.* The law firm argued that because the FDIC stood in the bank's shoes as receiver, and the wrongdoing of the bank's officers should be imputed to the bank, equitable defenses therefore precluded the FDIC from recovering against the law firm. *Id.* at 747. The Ninth Circuit, however, disagreed. Concluding that federal law governed the application of defenses against the FDIC, *id.* at 751, the court went on to hold that that the bank's inequitable conduct was not imputed to FDIC for the purpose of barring the FDIC's claims.[4] *Id.* at 752.

The United States Supreme Court subsequently reversed, holding that state law, not federal law, governs whether corporate officers' knowledge of fraud can be imputed to the FDIC suing as a receiver. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 114 S. Ct. 2048, 129 L. Ed. 2d 67 (1994). The Court thus remanded to the Ninth Circuit with instructions to analyze the applicability of O'Melveny's equitable defense against the FDIC under state law. *Id.* at 89. On remand, the Ninth Circuit reached "the same conclusion as ... last time[,]" holding that California law likewise did not permit equitable defenses to be applied against a bank's receiver where it would be inequitable to do so. *F.D.I.C. v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995). While recognizing that, "in general, '[a] receiver occupies no better position than that which was occupied by the person or party for whom he acts ... and any defense good against the original party is good against the receiver[,]'" *id.* at 19 (internal citations omitted), the court went on to acknowledge that "this rule is subject to exceptions; defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver." *Id.* (citing *Camerer v. California Sav. & Commercial Bank,* 4 Cal.2d 159, 170-71, 48 P.2d 39 (1935)). Balancing the equities in the case, the Ninth Circuit noted that the receiver was not a party to the original inequitable conduct and that application of the *in pari delicto* defense would place losses on innocent creditors rather than the allegedly culpable defendant. *Id.* ("While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law."). It further reasoned that because "[a] receiver, like a bankruptcy trustee and unlike a normal successor in interest, does not voluntarily step into the shoes of the bank[,]" application of equitable defenses against the receiver would frustrate the intricate regulatory scheme designed to protect innocent third parties by imputing the bank's

---

[4] The court expressly cautioned, however, that "it does not necessarily follow that equitable defenses can never be asserted against FDIC acting as a receiver." *Id.* at 752

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

inequitable conduct to the receiver. *Id.* Accordingly, the court reaffirmed its previous holding that the bank's inequitable conduct could not be imputed to FDIC. *Id.*

While the Court recognizes that *O'Melveny & Myers* does not necessarily stand for the broad proposition that equitable defenses may never be asserted against federal receivers, *see O'Melveny & Myers*, 61 F.3d at 19, it nonetheless agrees with the Receiver that the same equitable considerations that guided the Ninth Circuit in *O'Melveny & Myers* compel the same conclusion in this case. Like the receiver in *O'Melveny & Myers*, the Receiver in this case was not a party to any of the alleged misconduct conduct in which the PEM Group Principals engaged. Rather, he was appointed by the Court "to take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets . . . ." *SEC v. Private Equity Management Group, LLC*, No. CV-09-2901 PSG (Ex), Dkt. # 246. The Court finds persuasive the Receiver's assertion that allowing Stonefield to invoke the defense of *in pari delicto* would frustrate the Court's plan by "diminishing the value of the asset pool held," thereby hurting innocent third-party creditors, while benefitting alleged an alleged wrongdoer. *See O'Melveny & Myers*, 61 F.3d at 19; *see also Hays v. Paul, Hastings, Janofsky & Walker LLP*, No. CIV.A.106CV754-CAP, 2006 WL 4448809, at *10 (N.D. Ga. Sept. 14, 2006) (barring application of *in pari delicto* defense because "the result would be the protection [of] wrongdoers and the punishment of the innocent victims").

Thus, upon balancing the equities, the Court concludes that the doctrine of *in pari delicto* does not preclude the Receiver from pursuing his claims against Stonefield. Accordingly, the Court rejects Stonefield's position that the *in pari delicto* defense justifies dismissing the FAC.

C. Sufficiency of Allegations

Stonefield also argues that the Receiver failed to adequately plead his causes of action for professional negligence and aiding and abetting conversion. The Court addresses each in turn below.

1. *Professional Negligence Claim (First Cause of Action)*

To state a cause of action for professional negligence under California law, a plaintiff must allege that the defendant failed to use the skill and care that a reasonably careful

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

professional operating in the field would have used in similar circumstances, and that the defendant's failure proximately causes damage to plaintiff. *Thomson v. Canyon*, 198 Cal. App. 4th 594, 604, 129 Cal. Rptr. 3d 525, 532-33 (2011); *Carlton v. Quint*, 77 Cal. App. 4th 690, 698–699, 91 Cal. Rptr. 2d 844 (2000). Stonefield asserts that the Receiver fails to plead the element of causation because the FAC alleges that PEM Group's management was aware of the transactions Stonefield allegedly should have disclosed. Because, according to Stonefield, the acts and knowledge of PEM Group's management are imputed to PEMGroup (and, by extension, to the Receiver), such acts and knowledge therefore "eliminate the possibility that PEM Group actually relied upon the allegedly inaccurate audit reports issued by Stonefield." *Mot*. 21:26-22:5. This position, however, is misguided. Reasonable reliance is not an element of a professional negligence claim under California law. *Thomson*, 198 Cal. App. 4th at 604. Accordingly, Stonefield's argument – which appears to presuppose that the Receiver asserted a cause of action for a different tort of *negligent misrepresentation* – is inapposite.[5] Thus, given that reasonable reliance is not an element that the Receiver needs to establish to succeed on his claim for professional negligence, the Court need not be detained by Stonefield's discussion of the imputation rule (and/or its "adverse interest" and "sole actor" exceptions) at this stage in the proceedings.

Here, the FAC alleges with sufficient factual specificity that Stonefield's sub-standard auditing work injured GVEC and PEM Group because it concealed the PEM Group Principals' looting and misappropriation of funds. *See FAC* ¶¶ 33-35, 48. Moreover, as the Receiver correctly points out, because questions of causation raise issues of fact, dismissal on the basis of causation is premature at this stage in the proceedings. Accordingly, the Court concludes that the Receiver has adequately alleged the element of causation, and therefore can maintain his first cause of action for professional negligence.

        2.    *Aiding and Abetting Conversion Claim (Second Cause of Action)*

---

[5] The elements of a negligent misrepresentation claim are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.*, 196 Cal. App. 4th 1559, 127 Cal. Rptr. 3d 589 (2011). As noted above, the Receiver asserts no such claim.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

Lastly, Stonefield challenges the Receiver's second cause of action for aiding and abetting conversion. Under California law, a defendant may be liable for aiding and abetting the commission of an intentional tort if the plaintiff can establish that the defendant "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144, 26 Cal. Rptr. 3d 401, 405 (2005); *see also In re First Alliance Mortgage Co.,* 471 F.3d 977, 993 (9th Cir. 2006) ("[a]lthough the California decisions on this subject may not be entirely consistent, we agree ... that aiding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge, [but] not specific intent."). As both California and federal courts have noted, even "ordinary business transactions" can constitute substantial assistance for purposes of aiding and abetting liability, if the defendant actually knew the transactions were assisting the tortfeasor in committing a specific tort. *Casey*, 127 Cal. App. 4th at 1445; *In re First Alliance Mortg. Co.*, 471 F.3d at 994-95 (9th Cir. 2006); *see also Benson v. JPMorgan Chase Bank, N.A.,* No. C-09-5272-EMC, 2010 WL 1526394, *4 (N.D. Cal. Apr. 25, 2010).

Stonefield contends that the Receiver's aiding and abetting conversion claim should be dismissed because the allegations do not establish that Stonefield had actual knowledge that the PEM Group Principals committed conversion, or that Stonefield "acted with the intent of facilitating the commission of that tort." *Mot.* 25:16-19. The Court, however, disagrees. To the contrary, it finds that the Receiver has sufficiently alleged that Stonefield actually knew of the underlying conversion of PEM Group and GVEC assets.

A plaintiff can plead actual knowledge of an intentional tort by alleging facts that demonstrate the defendant was aware of the commission of the tort. *See Neilson v. Union Bank of California,* 290 F. Supp. 2d 1101, 1120 (C.D. Cal. 2003); *see also Marcelos v. Dominguez*, No.C-08-00056, 2008 WL 2788173, *8 (N.D. Cal. July 18, 2008) (finding actual knowledge despite plaintiff having included the phrase "knew or should have known" because plaintiff pled facts demonstrating actual knowledge). For instance, in *Neilson*, the court concluded that the complaint adequately pled that the defendant banks had actual knowledge of the fraudulent Ponzi scheme conducted by a third party, Mr. Slatkin. *See Neilson*, 290 F. Supp. 2d at 1120. The court noted that the complaint detailed the manner in which the Ponzi scheme operated, describes Slatkin's fraudulent transactions, and outlines the banks' involvement in these activities. *Id.* at 1120. Further, it reasoned that by alleging that the banks utilized atypical

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

banking procedures to service Slatkin's accounts, the plaintiff raised an inference that the banks knew of the Ponzi scheme and sought to accommodate it by altering their normal way of doing business. *Id.* Accordingly, it concluded that the plaintiff had sufficiently pled general allegations of knowledge. *Id.*

In arguing that the FAC fails to adequately plead actual knowledge, Stonefield relies primarily on a California appellate decision, *Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144, 26 Cal. Rptr. 3d 401, 405 (2005). Such reliance, however, is misplaced. *Casey* involved a trustee who sued three banks for aiding and abetting a breach of fiduciary duty and aiding and abetting fraud. *Casey,* 127 Cal. App. 4th at 1141. The court reasoned that because the breach of fiduciary duty claim stemmed from the alleged misappropriation of corporate funds from the debtor corporation, the trustee was required to allege that the defendant banks knew of the source of the funds deposited into the alter-ego accounts. *See id.* at 1149, 1152. The complaint at issue, however, contained no allegation that the banks knew the alleged tortfeasors were misappropriating funds from the trust or that the money they were depositing belonged to the trust. *Id.* at 1152. Because the trustee had failed to allege that the banks knew of the source of the funds deposited into the alter-ego accounts, the court reasoned that the banks could not have known that allowing the directors and officers to withdraw funds from the accounts was assisting a diversion of corporate funds. *Id.* Accordingly, it held that the trustee failed to allege that the bank possessed the requisite knowledge to state a claim on an aiding and abetting theory of liability. *Id.*

Here, unlike in *Casey*, where the allegations failed to demonstrate that the banks were privy to enough facts to reveal the fraudulent scheme, the Receiver's FAC sets forth specific facts showing that Stonefield had actual knowledge of the PEM Group Principals' conversion of offering proceeds and misuse of investor funds. To wit, the FAC asserts that during audits of GVEC and its Tranches, Stonefield became aware of the improper inter-Tranche transfers "because, among other things, Stonefield reviewed the insurance policies (assets) that were the subjects of the sales and reviewed the sale and purchase agreements between the Tranches." *FAC* ¶¶ 26, 30. It goes on to allege that Stonefield knew the valuations of the insurance "policies were inaccurate because:

> (1) a conflict existed in that the same managers and advisors represented both the buying Tranche and the selling Tranche, (2) the valuations of the assets were prepared by PEMGroup, and not by a third party, (3) the returns on investments of insurance policies sold

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2666 PSG (Ex) | Date | Oct. 25, 2011 |
|---|---|---|---|
| Title | Robert P. Mosier *et al.* v. Stonefield Josephson, Inc., CPAs | | |

to affiliated Tranches were significantly higher than the industry average . . . and (4) some of the insurance policies were sold for an amount close to the face value of the policies.

*FAC* ¶ 31. Further, according to the FAC, Stonefield knew of the underlying conversion because GVEC portfolios were being "retired" through the sale of their assets to other entities in order to cover the GVEC portfolios' expenses. *FAC* ¶¶ 23-25. At this stage in the proceedings, the Court must take all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Moreover, as in *Neilson* where the court drew an inference of knowledge because "the Banks utilized atypical banking procedures," *Neilson*, 290 F. Supp. 2d at 1121, the Court can also infer knowledge based on allegations that Stonefield's audits and audit reports did not comply with GAAS standards. *See FAC* ¶¶ 30-31.

Thus, taking together the sum of the allegations, along with reasonable inferences that can be drawn from them, the Court holds that the Receiver has sufficiently alleged a plausible claim of aiding and abetting conversion.

IV.     Conclusion

Therefore, for the foregoing reasons, Stonefield's motion to dismiss the First Amended Complaint is DENIED.

**IT IS SO ORDERED.**